RHODES
vs.
RHODES.

RHODES vs. RHODES.

APPEAL FROM THE COURT OF THE THIRD JUDICIAL DISTRICT, THE JUDGE THEREOF PRESIDING.

$\frac{10L\ 85}{47\ 808}$

$\frac{10L\ 85}{50\ 1036}$

The District Court has jurisdiction in an action of partition, when it embraces two objects; first, to ascertain and determine the rights of the parties to the property in question; and, second, to decree a partition between them.

$\frac{10L\ 85}{52\ 2034}$

Whether an act, which is set up as a sale, be good as such or not? yet if it be clothed with all the formalities required by law, to give force and effect to donations *inter vivos*, it will be considered and held valid as a donation.

A donation *inter vivos* can comprehend only the present property of the donor; if it comprehends property to come, as regards *that*, it will be null: *Held*, that where a donation was made of lands, of which the donor was in possession only under an *inchoate* or equitable title, which was afterwards confirmed to him, the donation was valid on the perfection of title.

This is an action instituted by Aseneth P. Rhodes, widow of Henry Rhodes, deceased, and as tutrix of her minor children, against Sarah Rhodes, widow of John Rhodes, and tutrix of the minor children, to recover one half of a tract or section of land, which it is alleged, John Rhodes in his lifetime bound himself to convey to his said brother Henry, by a penal bond in the sum of two thousand dollars, on the condition that he, John Rhodes, was to use all lawful means and industry to obtain a donation of six hundred and forty acres of land, in virtue of a settlement right, which was then owned by him, and returned to the commissioners of the land office at St. Helena.

The plaintiff further alleges, that the said John Rhodes obtained the donation from the United States government, by virtue of a commissioners certificate, number 716, and dated November 1st, 1827, which was subsequently ordered

to be surveyed, &c.; that in virtue of said confirmation, said Henry Rhodes and his heirs became joint owners with John Rhodes, for one half thereof. They pray for a partition in kind or by licitation.

The defendant pleaded a general denial; that if any such bond or contract as the one sued on, was executed by the said John Rhodes, it was fraudulently obtained from him, made in error and without consideration; that the District Court was without jurisdiction of the matter alleged in the plaintiff's petition, and the case should be dismissed.

The suit is instituted on the following bond:

"Know all men by these presents, that I John Rhodes, &c., am held and firmly bound unto Henry Rhodes, &c., in the full sum of two thousand dollars, lawful money of the United States, and to the true and faithful payment whereof, I do hereby bind myself, my heirs, &c., firmly by these presents. Signed, &c., at Jackson, this 25th October, 1822.

"Now, the conditions of the above obligation are such, that if the said John Rhodes shall use all lawful means and industry, to obtain from the United States a donation of six hundred and forty acres of land, by virtue of a settlement right or claim which he the said John Rhodes owns, and has returned to the commissioners of the land office, which claim is situated on the waters of Sandy Creek, and is now inhabited and cultivated by said John Rhodes; and if when he shall so have obtained a donation for said land, he shall convey by good and sufficient title, one-half of said tract of land to the said Henry Rhodes, deducting the value of his said improvements on said tract of land, or one entire half of so much land as the said John Rhodes shall obtain, making the aforesaid deduction. It is further stipulated by these parties, that in case the said John Rhodes should fail in obtaining a donation of said land, and should be reduced to the necessity of purchasing the same from the United States, the said Henry Rhodes shall pay his full proportion of the purchase money; then this obligation shall be void, otherwise remain in full force.

"In testimony whereof, the said John Rhodes signs this
bond, in presence of Hugh W. Hill, judge of the parish of
Feliciana, &c., and the said Henry Rhodes also signs, accept-
ing the bond, and confirming the stipulation he therein makes
on the day above written.                JOHN RHODES,
    *Witness :* G. MORGAN,·          HENRY RHODES.
      "    B. BROWN.
             HUGH W. HILL, *Parish Judge.*"

The commissioner's certificate showed the confirmation of
an entire section of land, as a donation to John Rhodes.

Upon these pleadings and issues, the cause was submitted
to a jury, with the evidence and explanations of the parties.
The jury returned a verdict for the plaintiffs, upon which the
court rendered judgment, that they recover of the defendants
one undivided half of said tract of land. From this judgment
the defendant appealed.

*Lawson,* for the plaintiffs, contended, that the bond in this
case was binding on the heirs of John Rhodes. A promise to
sell amounts to a sale, when there exists a reciprocal consent
of both parties, as to the thing and the price thereof and
when this promise is evidenced by an act clothed with the
required formalities. *Civil Code,* 346, *articles* 4, 9. *Napoleon
Code,* 1589. 9 *Toullier, Nos.* 92, 93.

2. A sale is considered perfect, as soon as there is an
agreement for the object and the price, though no delivery has
been made. *Civil Code,* 346, *article* 4. 1 *Domat, lib.* 27,
*tit.* 2, *sec.* 1.

3. The act between the ancestors of plaintiffs and
defendants was clearly a sale, (in the sense of the Code,)
followed by tradition and continued possession, and in all
the subsequent transactions considered as such by them. It
is a sale which depended on the happening of an event, the
donation of the land. It is not the less a sale, because the
deed does not express the price of the thing : he who has
promised to sell real property, and who afterwards puts,
or suffers to enter into possession, him to whom he has made

EASTERN DIST.
June, 1836.

RHODES
vs.
RHODES.

the promise, is naturally supposed, by this, to execute his promise by a verbal or tacit sale, and in such a case it is presumed, that he has received the price, since he has neglected to require an act to secure the payment. *Civil Code*, 274, *article* 81. 9 *Toullier*, *No.* 93.

4. Such a sale, having as its basis a written promise to make titles, as well as the payment of the price, may be established by testimonial proof. 9 *Toullier*, *No.* 93. 3 *Louisiana Roports*, 169.

5. The bond to make title, is a commencement of proof in writing, and the receipt is a written acknowledgment of payment; these authorized parole testimony of the sale. *Civil Code*, 243. 9 *Toullier*, *No.* 93. 8 *Toullier*, 320–2. 4 *Martin*, *N. S.*, 203. 3 *Martin*, *N. S.*, 517. 12 *Martin* 713.

6. A receipt of the vendor, acknowledging payment by vendee, of the price of real property, is good evidence of a sale. 3 *Martin*, *N. S.*, 337. 1 *Louisiana Reports*, 311. 3 *Martin*, *N. S.*, 583. 6 *Martin*, 10.

*Andrews*, for the defendant.

1. The plaintiff in this case has mistaken her remedy, provided she even has any right. She should have sued to have title made to her, instead of *suing for partition*; for she cannot sue without the advice of a *family meeting*.

2. Her petition should have been in the alternative, for the *land*, or the *money* mentioned in the bond.

3. The District Court has no jurisdiction of an action of partition of a succession, *particularly where there are minors. Code of Practice, article* 924, *No.* 11. *Session Acts of* 1825, page 122. *Ibid. of* 1828, *page* 156, *section* 13. 7 *Martin*, *N. S.*, 469. *Hook* vs. *Hook*, 6 *Louisiana Reports*, 420. *Code of Practice, articles* 983, 995, 996.

4. There was no consideration given for the bond. On its face it purports to be a gratuitous donation; as such it is void. It is made of future property, and there is no appraisement; and it is in other respects *informal*. The consideration as set out in the petition has failed.

5. The plaintiff contends that it is a sale. If it is so on its face, has it the constituents of a sale? Can it be made so by connecting it with other transactions, by parole testimony? See 12 *Martin*, 404. 3 *Martin*, *N. S.*, 384. 5 *Louisiana Reports*, 457. *Civil Code, page* 310, *articles* 341, 342.

6. The verdict finds nothing, and is insufficient. *Code of Practice, article* 522. 4 *Martin*, *N. S.*, 410.

7. The judgment does not conform to the verdict, or the prayer of the petition. Petition prays for partition only; judgment gives title to the land, and partition.

8. Allowing, as is contended for by the plaintiff, that the bond from John to Henry Rhodes is a sale with a suspensive condition, then we contend that the condition is not accomplished. He was to make title, when he obtained title from the United States. He has no title; only a commissioner's certificate. *Civil Code, page* 274, *article* 81. 8 *Martin*, *N. S.*, 644.

*Mathews, J.*, delivered the opinion of the court.

This suit was commenced by the widow of Henry Rhodes, as representing her minor children, in her capacity of tutrix, against the tutrix of the children of John Rhodes. The action is founded on a bond or writing, obligatory, in which the ancestor of the defendants bound himself to convey, by sufficient title, one half of a tract of land, containing six hundred and forty acres, to Henry Rhodes, the father of the plaintiffs.

At the time this bond was made, John Rhodes, the obligor, had no absolute title to the property, but calculated on obtaining it by donation, from the United States, or by purchase under the provisions of the laws of congress, relating to the public lands in Florida.

He succeeded in his claim for a donation, in pursuance of the act of 1826, as appears by a certificate of the register and receiver, &c. There is also an order for the location of the claim, found in the evidence of record. The cause was

EASTERN DIST. submitted to a jury, who found a verdict for the plaintiffs, on
June, 1836. which judgment was entered, ordering a partition of the
RHODES land, in litigation between the plaintiffs and defendants.
*vs.*
RHODES. . Amongst other matters of defence, we find a plea to the
jurisdiction of the District Court.

The District We consider the cause as having two objects, first, to
Court has juris-
diction in an ac- ascertain the rights of the plaintiffs to the property; and,
tion of partition, second, to obtain a partition of it. Viewed in this manner,
when it embra-
ces two objects, the District Court was authorized to retain jurisdiction of the
first, to ascertain
and determine case. It is not exclusively cognizable by the Court of Pro-
the rights of the bates, not being strictly a partition of a succession, for the
parties to the
property in ques- question first to be settled, is, whether any part of the land
tion; and, se-
cond, to decree in dispute, belongs to the succession of Henry Rhodes.
a partition be-
tween them. According to the points made on the part of the defendants,
we are called on to examine the effects of the contract, on
which the plaintiffs rely for a judgment in their favor. It
was made in authentic form, before a notary and two wit-
nesses, and signed by both the parties. No valuable consi-
deration for the agreement is expressed in the instrument;
but the plaintiffs attempted to supply this defect, by proof of
payment of certain sums of money, made by Henry Rhodes
to his brother John, being the consideration of the promise.
The testimony to establish this fact was objected to, and
several bills of exception are found to the opinion of the judge
*a quo*, by which witnesses were received to prove the payment
of money, not shown by the written contract to have any
connection with it.

Whether an Whether the act under consideration be good or not, as
act, which is set
up as a sale, be a sale, we deem it unnecessary to determine, believing it to
good as such or be valid as a donation. It is clothed with all the formalities
not? yet if it be
clothed with all required by the Civil Code, to give force and effect to dona-
the formalities
required by law, tions *inter vivos*. See the *Civil Code of* 1808, *page* 220.
to give force and Opposed to the act as containing a valid donation, we are
effect to dona-
tions *inter vivos*, referred to the articles 43 and 48, found in the Civil Code, at
it will be consi-
dered and held page 218. In the first of these articles, it is declared, that
valid as a dona- " a donation *inter vivos* can comprehend only the present pro-
tion.
perty of the donor. If it comprehends property to come, it
shall be null with regard to that."

In the present case the evidence shows, that the ancestor of the defendants was in possession of the property promised to the donee, at the time of the contract, under a purchase of the settlement right of a person named Brown. His title, it is true, was inchoate; but he had reasonable and well grounded hopes, founded on the laws of congress, that it would be made perfect, and be completed, either by donation from the government, or by a right of pre-emption. Being in possession under color of title, which was afterwards confirmed to him by competent officers of the general government, so far as they could act on the case; we are of opinion, that the donor may be considered as having had an equitable title to the land in question, at the date of the donation. He was in possession; therefore it cannot be viewed, strictly speaking, as property to come, and consequently the article 43 of the Civil Code, does not govern the present case. The article 48 is wholly inapplicable; for it has reference only to moveables and slaves. The contracting parties were brothers, and the testimony shows, that the donee held possession of part of the land, subsequent to the act of donation, and that his brother would not sell any part of it without his consent, which was given in a sale made of one hundred and sixty-eight acres.

Under all the circumstances of the case, it is believed, that the plaintiffs are entitled to one half of the remainder of the tract of land in dispute, after deducting the number of acres sold by the brothers. The certificate of confirmation by the register and receiver, and the subsequent order, specifying the location of the claim, affords such *primâ facie* evidence of title, as to require a transfer of right from the defendants to the plaintiffs, without waiting for a patent. The certificate and location must be considered as a fulfilment of the condition, on which the property was to be transferred to the donee.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs, with the following amendments and additions: the property must

EASTERN DIST.
June, 1836.

RHODES
vs.
RHODES.

A donation *inter vivos* can comprehend only the present property of the donor; if it comprehends property to come, as it regards *that*, it will be null: *Held*, that where a donation was made of lands, of which the donor was in possession only under an *inchoate* or equitable title, which was afterwards confirmed to him, the donation was valid on the perfection of title.

EASTERN DIST.
June, 1836.

be divided according to the terms of the donation, deducting from the tract now to be partitioned, one hundred and sixty-eight acres and ninety-three hundredths, already sold, &c.